IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CR117 |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| LARITA DUNCAN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Larita Duncan's (Duncan) Motion to Suppress. **See** Filing No. 16. Duncan is charged in the Indictment with possession of a mixture or substance containing a detectable amount of cocaine on or about October 6, 2009, in violation of 21 U.S.C. § 844(a)  **See** Filing No. 1. Duncan seeks to suppress all physical evidence and statements obtained by law enforcement officers as the result of the October 6, 2009, traffic stop involving Duncan in Douglas County, Nebraska. **See** Filing No. 16.

On May 12, 2010, the court held an evidentiary hearing on the motion. Duncan was present with her counsel, Andrew J. Hilger. Assistant United States Attorney Susan T. Lehr represented the United States. During the hearing, the court received into evidence a photograph of the defendant at the scene of the arrest (Exhibit 1). The court heard the testimony of Omaha Police Department (OPD) Officer Adam Kruse (Officer Kruse) and Officer Carlie Potts (Officer Potts). A transcript (TR.) of the hearing was filed on May 17, 2010. **See** Filing No. 26. The defendant filed a post-hearing brief (Filing No. 27) on May 17, 2010. The motion was deemed submitted on May 20, 2010, after the government declined to file a post-hearing brief.

FINDINGS OF FACT

Officer Kruse is a law enforcement officer for the OPD who patrols the Northeast side of Omaha (TR. 3). On October 6, 2009, at approximately 6:11 p.m., Officer Kruse responded to a call on his police cruiser's radio about a possible armed party in a blue Pontiac at a gas station on 30th and Parker Streets (TR. 4). On his police cruiser's radio,

Officer Kruse heard that police officers had stopped the Pontiac in front of a house before the Pontiac drove off in a reckless manner and attempted to evade police for approximately four minutes (TR. 4-5). The pursuit ended on 22nd Street between Wirt and Spencer Streets (TR. 5). By the time Officer Kruse arrived at the scene where the Pontiac was stopped, several OPD officers had surrounded the Pontiac with their weapons drawn and were issuing loud verbal commands for the occupants of the Pontiac to exit the vehicle (TR. 5). Officer Kruse exited his police cruiser, ran to the Pontiac, and gave loud verbal commands for the front seat passenger to exit the vehicle (TR. 6). The front seat passenger, a female, was later identified as Duncan (TR. 6). Duncan did not immediately obey Officer Kruse's commands (TR. 6). Duncan was removed from the Pontiac, taken to the ground, and handcuffed (TR. 6).

Officer Kruse conducted a search for weapons in Duncan's jacket pockets, but did not find a weapon (TR. 7). Officer Kruse, a male, did not conduct a full pat-down of Duncan (TR. 7). Putting handcuffs on Duncan and checking Duncan's jacket pockets was the only physical contact Officer Kruse had with Duncan (TR. 8). Officer Kruse put Duncan in the back seat of a police cruiser (TR. 8).

Officer Potts, who has four years experience as a law enforcement officer for the OPD, also patrols the Northeast side of Omaha (TR. 12). Officer Potts described the Northeast area of Omaha as an area of high crime, gangs, and violence (TR. 12). Officer Potts, a female, arrived at the scene shortly after Office Kruse (TR. 12). There were no other female police officers besides Officer Potts at the scene (TR. 12). Through training and experience, Officer Potts knew the officers needed a female to conduct a full pat-down for a weapon on Duncan's person (TR. 12). Prior to the pat-down, other officers informed Officer Potts that a weapon had not been found on Duncan's person (TR. 18). Officer Potts was concerned for her safety and the safety of others around her (TR. 18). Over the course of her four year career with the OPD, Officer Potts conducted hundreds of pat-downs of women and had found various weapons hidden in women's brassieres (TR. 16).

Officer Potts conducted a pat-down of Duncan in the same manner that she had every other in her career, starting by instructing Duncan to spread her feet (TR.15). Officer Potts seized Duncan's hands, and starting with her free hand in a blade position, Officer

Potts went down the center of Duncan's chest to feel between the chest before going over each side of the breast (TR. 15). Officer Potts felt two individual protrusions on Duncan's breasts which Officer Potts believed, from her experience and knowledge, were narcotics (TR. 16). When Officer Potts asked Duncan what the protrusions were, Duncan did not answer (TR. 16). When Officer Potts again asked Duncan what the protrusions were, Duncan said, "It's there. You can get it" (TR. 16). Officer Potts reached in Duncan's shirt and withdrew a large baggie of what appeared to be marijuana and another large baggie of what appeared to be cocaine (TR. 17).

## LEGAL ANALYSIS

Duncan does not contest the validity of the traffic stop. Duncan argues that after Officer Kruse failed to find a weapon in Duncan's jacket, Officer Potts lacked legal justification to effectuate an additional search of Duncan's person. Specifically, Duncan contends the search was invasive, and Duncan lacked probable cause or even reasonable suspicion to believe Duncan was concealing illegal drugs. For these reasons, Duncan seeks to suppress evidence of possession of cocaine stemming from the October 6, 2009, arrest.

"An investigative stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity." *United States v. Briley*, 319 F.3d 360, 364 (8th Cir. 2003). "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon." *Terry v. Ohio*, 392 U.S.1, 24 (1968). "The Supreme Court has held that a reasonable fear of harm is sufficient to justify a seizure for a short period of time, in order to conduct a pat-down search, in certain circumstances." *United States v. Ellis*, 501 F.3d 958, 961 (8th Cir. 2007) (**citing** *Terry*, 392 U.S. at 29). The court views the facts supporting a protective frisk under an objective standard, looking at the totality of the circumstances known to the officer at the time of the search. *Ellis*, 501 F.3d at 961. "A protective frisk is warranted if 'specific articualable facts taken together with rational

inferences support the reasonable suspicion that a party was potentially armed and dangerous.'" *Id.* (**quoting** *United States v. Clay*, 640 F.2d 157, 159 (8th Cir. 1981)). In determining whether an officer had a basis for initiating the pat-down, the court must evaluate "whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed, and whether the officer had a sufficient degree of suspicion that the party to be frisked was armed and dangerous." *Clay*, 640 F.2d at 159.

> [T]he "purpose of a pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence," and while the search must therefore "be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby," officers may lawfully seize contraband they incidentally discover in "plain touch" during a *Terry* frisk.

*United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) (**quoting** *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)). A police officer may seize apparent contraband if the officer detects it during a valid protective frisk. *United States v. Binion*, 570 F.3d 1034, 1040 (8th Cir. 2009) (**citing** *Minnesota*, 508 U.S. at 376); *see also United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008) (holding so long as the frisk is supported by an objectively reasonable belief that the suspect was dangerous, the fact that an officer finds drugs rather than a weapon does not require suppression of the drug evidence).

Looking at the totality of the circumstances known to Officer Potts at the time Duncan was detained, Officer Potts' actions were reasonable. Officer Potts was the only female officer present at the scene, and Officer Potts knew through training and experience that the officers needed a female to conduct a complete pat-down of Duncan. Officer Potts reasonably feared for her safety and the safety of others around her. Officer Potts' fears were objectively justified for several specific reasons. First, Duncan was an occupant of the vehicle that matched the description of a vehicle with an armed party reported on Officer Potts' police cruiser radio. Second, Duncan had been a passenger in the vehicle that attempted to evade OPD officers during pursuit. Third, Duncan did not immediately obey Officer Kruse's commands to exit the vehicle. Fourth, Officer Kruse had only conducted a search for weapons of Duncan's jacket pockets, not the entirety of Duncan's

person. Officer Potts had reasonable suspicion criminal activity was present and Duncan was armed and presently dangerous. In her four-year career as an OPD Officer, Officer Potts had conducted hundreds of pat-downs of women and discovered many items hidden in women's brasseries, including weapons. Accordingly, legal justification supports Officer Potts' pat-down of Duncan's person. Officer Potts had probable cause to seize the protrusions on Duncan's person because Officer Potts knew through her training and experience that the protrusions were narcotics. The discovery of a large baggie of what appeared to be marijuana and another large baggie of what appeared to be cocaine hidden on Duncan's person led to Duncan's arrest. Duncan's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Larita Duncan's Motion to Suppress ([Filing No. 16](#)) be denied.

## ADMONITION

Pursuant to [NECrimR 59.2](#) any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 7th day of June, 2010.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.